**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ANNETTE NICOLE HANNA,

        Plaintiff,

        vs.                                     No. 1:20-CV-00132-KRS

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,[1]

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court upon Plaintiff's Motion to Reverse and Remand for a Hearing with Supportive Memorandum (Doc. 23), dated January 19, 2021, challenging the determination of the Commissioner of the Social Security Administration ("SSA") that Plaintiff is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. The Commissioner responded to Plaintiff's motion on March 18, 2021 (Doc. 24), and Plaintiff filed a reply brief on April 2, 2021 (Doc. 25). With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P. 73(b), the Court has considered the parties' filings and has thoroughly reviewed the administrative record. Having done so, the Court concludes that the Appeals Council erred in its failure to consider Plaintiff's additional evidence and will therefore GRANT Plaintiff's motion and remand this case back to the SSA for proceedings consistent with this opinion.

## I.  PROCEDURAL POSTURE

On November 2, 2016, Plaintiff filed an initial application for disability insurance benefits. (*See* Administrative Record ("AR") at 117). Plaintiff alleged that she had become disabled on March 9, 2007, due to depression, an adjustment disorder, anxiety, and rheumatoid

---

[1] The Acting Commissioner is substituted as the proper Defendant pursuant to FED. R. CIV. P. 25(d).

arthritis. (*Id.* at 118-19). Her application was denied at the initial level on February 6, 2017 (*id.* at 117), and at the reconsideration level on April 14, 2017 (*id.* at 125). Plaintiff requested a hearing (*id.* at 146), which ALJ Lillian Richter conducted on October 2, 2018 (see *id.* at 92-116). Plaintiff was represented by counsel and testified at the hearing (*id.* at 92, 95-113), as did a vocational expert (*id.* at 113-16). At the hearing, Plaintiff amended her onset date to February 1, 2011. (*See id.* at 47, 95).

On April 17, 2019, the ALJ issued her decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act through the date she last met the SSA's insured status requirements. (*Id.* at 47-56). Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 224-26), and on December 16, 2019, the Appeals Council denied the request for review (*id.* at 9-15), which made the ALJ's decision the final decision of the Commissioner. In declining the request for review, the Appeals Council declined to consider certain additional evidence—specifically, a July 15, 2019 letter from treating psychiatrist Stephanie Tucker, M.D., and a May 18, 2019 report from psychological consultative examiner Robert Krueger, Ph.D.—as not relating to the period at issue and therefore not affecting the decision as to whether Plaintiff was disabled during the relevant period. (*See id.* at 10); (*see also id.* at 16-38). On February 14, 2020, Plaintiff filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II.  DISABILITY FRAMEWORK

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA

has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.  THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's claim pursuant to the five-step sequential evaluation process. (AR at 48-49). First, the ALJ found that Plaintiff last met the SSA's insured status requirements on December 31, 2012 (her "date last insured") and that she had not engaged in substantial gainful activity between her alleged onset date of February 1, 2011, and her date last insured. (*See id.* at 49). The ALJ then found at step two that Plaintiff's depression constituted a severe impairment and that she suffered from multiple non-severe impairments. (*See id.* at 49-50). Although Plaintiff alleged other conditions including an adjustment disorder, post-traumatic stress disorder, anxiety, insomnia, and inflammatory arthritis, the ALJ found that the medical

evidence did not demonstrate a medically determinable impairment related to these allegations. (*See id.* at 50).

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*See id.* at 51). In so finding, the ALJ determined that Plaintiff's mental impairments did not satisfy the "paragraph B" criteria of listing 12.04 in Appendix 1 and that her impairments did not otherwise meet or medically equal the criteria for that listing. (*See id.*).

Proceeding to the next step, the ALJ reviewed the evidence of record, including Plaintiff's subjective symptom evidence, several third-party function reports from friends and family, and certain opinions and other evidence provided by medical and non-medical sources. (*See id.* at 52-54). In doing so, the ALJ afforded little weight to the opinions on Plaintiff's mental limitations provided by Dr. Tucker, by treating physician Terrance Reagan, M.D., and by counselor Robert K. Becher, LPCC, finding that these providers' opinions did not reflect an analysis of Plaintiff's abilities prior to her date last insured and that they were inconsistent with other record evidence. (*See id.* at 53-54). Based on her review of the record evidence, the ALJ concluded that Plaintiff possessed an RFC to perform a full range of work with certain nonexertional limitations. (*See id.* at 52).

Moving to step five, the ALJ determined that while Plaintiff was unable to perform any past relevant work through her date last insured, she had been able to perform other jobs in significant numbers in the national economy during that time. (*See id.* at 54-56). The ALJ therefore concluded that Plaintiff's work prior to her date last insured was not precluded by her RFC and that she was not disabled. (*See id.* at 56).

## IV.  DISCUSSION

Plaintiff's claims of error relate solely to the Appeals Council's refusal to consider the opinions expressed in Dr. Tucker's July 2019 letter and those expressed in Dr. Krueger's consultative examination report. (*See* Doc. 23 at 14-24). The Commissioner argues that the Appeals Council did not actually refuse to consider those opinions and that, at any rate, substantial evidence supported the Appeals Council's decision to reject the providers' conclusions. (*See* Doc. 24 at 11-20). The Court concludes that Plaintiff has the better of the argument.

### A.  STANDARD OF REVIEW

#### 1.  Substantial Evidence or *De Novo* Review

As an initial matter, the Court must resolve a dispute as to the applicable degree of deference that the Court must afford upon review of this action. The parties agree that judicial review of the Commissioner's decisions is usually limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). Under that standard, the Commissioner's decision stands if substantial evidence supports the ALJ's findings and the correct legal standards were applied. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). When the Appeals Council *accepts* additional evidence when determining whether to review an appeal of an ALJ's decision, that additional evidence becomes part of the administrative record and is to be considered when evaluating the Commissioner's decision for substantial evidence. *See, e.g.*, *Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858-59 (10th Cir. 1994)).

But "where the Appeals Council *rejects* new evidence as non-qualifying and the claimant challenges that ruling on judicial review," such an appeal presents a question of law that is reviewed *de novo* by the Court. *See Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011). Under SSA regulations, when evidence is presented for the first time to the Appeals Council, that body will only consider the evidence if it "is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *see also id.* § 404.970(b) (incorporating subsection (a)(5) criteria into rules for considering additional evidence). Because additional evidence cannot be considered if it does not meet these standards, the Tenth Circuit has held in unpublished but persuasive authority that "the Appeals Council's dismissal of the additional evidence's import [under a subsection (a)(5) criterion] indicates that it ultimately found the evidence did not qualify for consideration at all." *Padilla v. Colvin*, 525 F. App'x 710, 712 (10th Cir. 2013) (unpublished) (noting that these criteria amount to "predicate requirements . . . to warrant consideration" of additional evidence).

The Commissioner contends that the substantial-evidence standard should apply here because the Appeals Council "looked at" and purportedly accepted Plaintiff's additional evidence. (*See* Doc. 24 at 12). But the Appeals Council plainly stated that the additional evidence "does not relate to the period at issue" and "does not affect the decision about whether [Plaintiff was] disabled." (AR at 10). Because chronological pertinence and materiality are "predicate requirements" for additional evidence to be considered, the Appeals Council's finding that the records did not relate to the period at issue and did not affect the ALJ's decision necessarily amounted to a decision not to accept or consider that evidence. *See, e.g.*, *Padilla*, 525 F. App'x at 712; *see also Romero v. Saul*, No. 20-cv-00282 JFR, 2021 WL 1634408, at *6 (D.N.M. Apr. 27,

2021) (quoting *Padilla*, 525 F. App'x at 712) ("[A]ssessing whether temporal relevance or reasonable probability exist are 'predicate requirements . . . to warrant consideration' and does not equate to performing the review that the social security regulations contemplate.").[2]

The Commissioner presses the matter further, asserting that the Appeals Council actually "exhibited the evidence." (*See* Doc. 24 at 12). The record makes clear, however, that this is not correct:

> An "exhibit" is "any evidence upon which a finding and decision are based," whether before an ALJ or the Appeals Council. If the Appeals Council had exhibited the evidence, it would appear in the "Medical Records" section at the end of the Administrative Record. Because the Appeals Council did *not* exhibit it, the records were "included in the administrative record" but placed at the beginning and treated as "procedural documents, similar to the hearing decision or AC denial notice." Thus, the additional exhibits are not part of the record of medical evidence before the Court.

*Martinez v. Saul*, No. 19-cv-00980 SCY, 2020 WL 4597024, at *5 n.4 (D.N.M. Aug. 11, 2020) (citing Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-4-2-20 (May 1, 2017)) (internal citations omitted); *accord Romero*, 2021 WL 1634408, at *6 & n.6 (citation omitted). As in *Martinez* and *Romero*, the opinions at issue here were not included among the "additional

---

[2] The Court joins the other jurists in this District who have rejected the Commissioner's repeated efforts to argue otherwise. *See, e.g.*, *Muskett v. Saul*, 20-cv-00006 KK, 2021 WL 826675, at *5 (D.N.M. Mar. 4, 2021) ("[I]n determining that [medical evidence] did not satisfy the chronological pertinence standard, the Appeals Council implicitly determined that the evidence did not qualify for consideration."); *Valencia v. Saul*, No. 19-cv-00631 JHR, 2020 WL 7230114, at *5 (D.N.M. Dec. 8, 2020) (ruling that *de novo* review "is mandated by the Appeals Council's Order which expressly held that [medical evidence] "does not relate to the period at issue" and "does not affect the decision about whether [the claimant was] disabled"); *Pruett v. Saul*, No. 19-cv-00817 SMV, 2020 WL 6196175, at *3 (D.N.M. Oct. 22, 2020) (citing *Padilla*, 525 F. App'x at 712) ("Because 'relat[ing] to the period on or before the date of the hearing decision' is a predicate requirement for consideration, the Appeals Council could not have considered the materials after determining that they did not relate to the time period at issue.'") (internal citations omitted); *Martinez v. Saul*, No. 19-cv-00980 SCY, 2020 WL 4597024, at *5-6 (D.N.M. Aug. 11, 2020) (ruling that "the Appeals Council rejected the new evidence because it found that the evidence is non-qualifying under subsection (a)(5)'s new/material/temporally relevant standard"); *Cordova v. Saul*, No. 19-cv-00126 LF, 2020 WL 614577, at *4 (D.N.M. Feb. 10, 2020) ("[I]n determining that [the claimant's] additional evidence did not satisfy the reasonable-probability standard [by concluding that the claimant did not "show a reasonable probability that it would change the outcome of the decision], the Appeals Council implicitly disqualified the evidence from consideration in a substantial evidence review."); *see also Romani v. Saul*, No. 18-cv-00637 KBM, 2019 WL 2602553, at *4 (D.N.M. June 25, 2019) (rejecting Commissioner's invocation of *Vallejo*'s substantial-evidence standard because "the Appeals Council found the new evidence was not material and declined to incorporate it into the Administrative Record as an exhibit"); *Hernandez v. Berryhill*, No. 18-cv-00135 CG, 2018 WL 6411329, at *5 (D.N.M. Dec. 6, 2018) (same).

evidence which [the Appeals Council] [was] making part of the record" (AR at 14) (listing

exhibits), but instead were treated as procedural documents that were included with the Appeals

Council decision but not considered or exhibited in the process (*see id.* at 16-38).

In short, the Appeals Council rejected and declined to consider or exhibit Plaintiff's

additional evidence upon determining that the evidence "does not relate to the period at issue"

and "does not affect the decision about whether [Plaintiff was] disabled." (*See* AR at 10).

Consequently, the issue before the Court is not whether this rejection was supported by

substantial evidence, but whether the additional exhibits should be part of the record at all. *See,*

*e.g.*, *Padilla*, 525 F. App'x at 712; *Romero*, 2021 WL 1634408, at *6 & n.6. The Court will

therefore apply the *de novo* standard of review to determine whether the Appeals Council

properly applied 20 C.F.R. § 404.970(b) in rejecting that evidence. *See Krauser*, 638 F.3d at

1328.

### 2.    Requirements for Accepting Additional Evidence

The parties also disagree as to how to apply the standard set forth in § 404.970(b).[3] As

noted, that regulation only permits the Appeals Council to consider additional evidence that was

not presented to the ALJ if that evidence "is new, material, and relates to the period on or before

the date of the hearing decision, and there is a reasonable probability that the additional evidence

would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *see also* 20 C.F.R.

§ 404.970(b) (incorporating subsection (a)(5) criteria).[4] Plaintiff argues that the requirements for

---

[3] The Commissioner's reliance on any formulation of the § 404.970(b) factors is inconsistent with her position that the Appeals Council actually accepted Plaintiff's additional evidence, an argument that she does not make in the alternative. (*See* Doc. 24); *see also, e.g.*, *Pruett*, 2020 WL 6196175, at *4 n.5 (citing *Padilla*, 525 F. App'x at 712) ("These arguments [relying on § 404.970(b)] are incompatible with Defendant's principal argument, which is that the Appeals Council considered the evidence [at issue]. Defendant does not make the arguments in the alternative. If the Appeals Council had considered the evidence, as Defendant argues, then the evidence would have had to be new, material, and chronologically pertinent.") (internal citations omitted).

[4] Section 404.970(b) requires that the claimant show not only novelty, materiality, and chronological pertinence, but also that there was "good cause for not informing [SSA] about or submitting the evidence" no later than 5 business

these elements are governed by binding Tenth Circuit precedent. (*See* Doc. 23 at 17-18, 21) (citing, *e.g.*, *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003)). By contrast, the Commissioner largely relies on definitions for these elements stated in the most recent version of a procedural manual published by the SSA. (*See* Doc. 24 at 12-14) (citing HALLEX I-3-3-6(B)(2)-(3), 1993 WL 643129 (May 1, 2017)).

In *Threet*, the Tenth Circuit held that "[e]vidence is *new* . . . if it is not duplicative or cumulative," and that evidence is *material* under § 404.970(b) "if there is a reasonable possibility that [it] would have changed the outcome." *See* 353 F.3d at 1191 (citations omitted) (emphasis added). Plaintiff, citing these definitions, posits that the inclusion of the "*reasonable probability*" requirement in the most recent revisions to § 404.970 operates to heighten the materiality requirement recognized by the Tenth Circuit in *Threet*. (Doc. 23 at 18).

The Commissioner's own description of the § 404.970(b) standard, by contrast, relies on the following HALLEX definitions:

> Additional evidence is new if it is not part of the claim(s) file as of the date of the hearing decision.[5]

> Additional evidence is material if it is relevant, i.e., involves or is directly related to issues adjudicated by the ALJ.

---

days before the ALJ's hearing. *See* 20 C.F.R. § 404.970(b) (citing 20 C.F.R. § 404.935). While Plaintiff contends that good cause existed to excuse the timing of her filing (*see* Doc. 23 at 15-16), the Commissioner takes the position that the good-cause inquiry is "not relevant" because the Appeals Council did not address that issue when rejecting Plaintiff's evidence. (Doc. 24 at 12 n.7); (*see also* Doc. 25 at 1). The Court has previously observed that jurists in this District are in disagreement "as to whether a reviewing court should address the recently-enacted good-cause requirement of § 404.970(b) where the Appeals Council did not reject evidence on that basis." *Marquez v. Saul*, No. 1:20-cv-00110 KRS, 2021 WL 2073510, at *4 n.3 (D.N.M. May 24, 2021) (citations omitted). However, because the Commissioner does not dispute Plaintiff's assertion that good cause existed in her case, the Court concludes that the issue need not be addressed further. *See id.* (citing *Bisbee v. Berryhill*, No. 18-cv-00731 SMV, 2019 WL 1129459, at *3 n.6 (D.N.M. Mar. 12, 2019)) (noting apparent consensus that good-cause analysis is not necessary where "the Commissioner [does] not dispute that good cause existed").

[5] Despite relying on the HALLEX definition for "new" evidence, the Commissioner confusingly expends a significant amount of effort arguing that Plaintiff's additional evidence is "cumulative of the evidence before the ALJ" (*see* Doc. 24 at 14, 16-17), a factor that appears in *Threet* but not in the HALLEX. The Commissioner does not explain why the supposedly cumulative nature of Plaintiff's additional evidence would be consequential if the Court were to rely on the HALLEX definition rather than the *Threet* standard.

HALLEX I-3-3-6(B)(2). Further, under the Commissioner's interpretation of the new regulations, the "reasonable probability" requirement is wholly distinct from the materiality inquiry. (*See* Doc. 24 at 14) (citing HALLEX I-3-3-6(B)(2)-(3)).

The Commissioner does not explain why the Court should rely upon the HALLEX definitions to the extent that they conflict with *Threet*; instead, the Commissioner appears to simply ignore the *Threet* standard. (*Cf.* Doc. 24 at 12-14). But the Court is not in the position to do the same. *See, e.g.*, *Garcia v. Bd. of Cnty. Comm'rs*, No. 09-cv-00322 BB/WDS, 2010 WL 11618983, at *7 (D.N.M. Nov. 30, 2010) (quotation omitted) ("[D]istrict courts are 'bound to apply Tenth Circuit precedent unless the precedent has been overruled by the Tenth Circuit sitting en banc or superseded by a contrary Supreme Court decision.'"). In the absence of any developed argumentation as to why it should not do so, the Court will apply the standards provided in binding Tenth Circuit precedent for determining whether additional evidence before the Appeals Council was new or material, while relying on the HALLEX definitions to inform the Court's interpretation of those standards where appropriate. *See, e.g.*, *Threet*, 353 F.3d at 1191.

That outcome does not directly resolve the question of where the "reasonable probability" inquiry fits into this analysis. Consistent with Plaintiff's argument, the prevailing view in this District is that "[t]his requirement heightens the claimant's burden to prove materiality: whereas the previous test required merely a reasonable *possibility* of changing the outcome, now it requires a reasonable *probability* of changing the outcome." *Bisbee v. Berryhill*, No. 18-cv-00731 SMV, 2019 WL 1129459, at *3 n.5 (D.N.M. Mar. 12, 2019) (citation omitted); *see also, e.g.*, *Muskett v. Saul*, No. 20-cv-00006 KK, 2021 WL 826675 at *7 (D.N.M. Mar. 4, 2021) (citations omitted); *Gonzales v. Saul*, No. 19-cv-00554 CG, 2020 WL 1288469, at *5 (D.N.M.

Mar. 18, 2020) (citations omitted); *Cordova v. Saul*, No. 19-cv-00126 LF, 2020 WL 614577, at *3 (D.N.M. Feb. 10, 2020) (citation omitted). The Court agrees that this approach properly reconciles the Tenth Circuit's holding in *Threet* with the Commissioner's recent addition of the "reasonable probability" factor to the § 404.970(b) analysis. Accordingly, in determining whether Plaintiff's additional evidence was *material*, the Court will consider whether "there is a reasonable [probability] that [the evidence] would have changed the outcome" had it been accepted by the Appeals Council. *See Threet*, 353 F.3d at 1191; 20 C.F.R. § 404.970(a)(5).

It does not appear that there is any dispute as to the final § 404.970(b) factor, whether evidence "relates to the period on or before the date of the hearing decision." Plaintiff herself relies on the HALLEX standard for this factor (*see* Doc. 23 at 21-22), which asks whether the evidence "is dated on or before the date of the hearing decision, or the evidence post-dates the hearing decision but is reasonably related to the time period adjudicated in the hearing decision", HALLEX I-3-3-6(B)(2). The Commissioner does not push back on this framing, and the HALLEX standard does not obviously conflict with any binding Tenth Circuit precedent on the issue. Accordingly, the Court will refer to the HALLEX standard when considering the question of chronological pertinence.

In summary, the Court's *de novo* review of the Appeals Council's rejection of Plaintiff's additional evidence will turn on three issues: (1) whether that evidence was "new," meaning "not duplicative or cumulative"; (2) whether that evidence was "material" under a heightened standard, meaning that there was "a reasonable [probability] that [the evidence] would have changed the outcome" had it been accepted; and (3) whether that evidence was "chronologically pertinent" such that it "relate[d] to the period on or before the date of the hearing decision." *See Threet*, 353 F.3d at 1191; *see also* 20 C.F.R. § 404.970(a)(5). Plaintiff bears the burden of

establishing that these factors are met. *See, e.g.*, *Bisbee*, 2019 WL 1129459, at *3 n.5 (noting "claimant's burden" to establish satisfaction of § 404.970(a)(5) factors).

## B. ANALYSIS

### 1.   Additional Evidence from Dr. Tucker

Plaintiff saw Dr. Tucker several times beginning in November 2016 before Dr. Tucker completed a medical assessment of her mental abilities in April 2017. (*See* AR 513-16) (assessment); (*see also id.* at 487-90, 501-02, 509-11). In that assessment, Dr. Tucker concluded that Plaintiff had multiple moderate and marked limitations in her capacity for mental work activities. (*See id.* at 513-14). Dr. Tucker also concluded that Plaintiff possessed marked limitations in at least two of the four paragraph B criteria of listing 12.04 and three of the four paragraph B criteria of listing 12.06 under Appendix 1 of the SSA's regulations, which is sufficient for step-three purposes to find that Plaintiff had an impairment meeting or equaling the criteria for severe affective disorder and severe anxiety-related disorders respectively.[6] (*See id.* at 515). A second assessment by Dr. Tucker in August 2018 also noted multiple moderate and marked limitations. (*See id.* at 806-07). However, the ALJ's April 2019 decision accorded little weight to Dr. Tucker's assessments,[7] reasoning that her treatment records did not pertain to the period prior to Plaintiff's date last insured and that those records showed normal present-day mental status. (*See id.* at 54). The ALJ ultimately concluded that Plaintiff did not have a medically determinable anxiety-related impairment, that she did not meet the paragraph B criteria of listing 12.04, and that she possessed an RFC with less restrictive mental limitations than those recognized by Dr. Tucker. (*See id.* at 50-52).

---

[6] *See* 20 C.F.R., Part 404, Subpt. P, App'x 1, §§ 12.00(A)(2), 12.04(B), 12.06(B).
[7] Plaintiff's claims were filed before March 27, 2017, meaning that the new regulations concerning the handling of medical opinion evidence found at 20 C.F.R. § 404.1520c and 20 C.F.R. § 404.920c do not apply to this proceeding.

Dr. Tucker's July 15, 2019 letter appears intended to remedy the shortcomings that the ALJ found in her earlier assessments. In that letter, Dr. Tucker opined that Plaintiff has been "completely disabled since 2006" due to "Panic Disorder, Agorophobia [*sic*], and Major Depressive Disorder." (*Id.* at 17). Dr. Tucker further stated that Plaintiff's 2007 job loss was due to "missed work related to the death of [Plaintiff's] husband," and she cited "several sources" that "corroborated" Plaintiff's symptoms," including those [sources] mentioned in recent neuropsychological testing by Dr. Robert Krueger completed on 5/18/19." (*See id.*). The Appeals Council rejected this evidence as immaterial and unrelated to the period at issue. (AR at 10).

Plaintiff argues that this additional evidence from Dr. Tucker was new, material, and chronologically pertinent. (*See* Doc. 23 at 17-23). The Commissioner, incorrectly arguing under the substantial-evidence standard, contends that the evidence is "new" under the HALLEX definitions but cumulative of other evidence that the ALJ discounted, including Dr. Tucker's earlier evidence. (*See* Doc. 24 at 16-17). Due to this alleged consistency with discounted evidence and an alleged inconsistency with the rest of the record, the Commissioner also argues that there is no reasonable probability that Dr. Tucker's July 2019 letter would change the outcome of the ALJ's decision. (*See id.* at 17). The Commissioner further argues that the evidence is not chronologically pertinent because it pertains to a treatment relationship beginning after the date last insured. (*See id.* at 17-19).

The Court finds that Dr. Tucker's letter is new and not cumulative, for essentially the same reasons cited by the Honorable Stephan M. Vidmar, United States Magistrate Judge, in *Pruett*:

> [T]he Appeals Council did not reject the evidence as cumulative. Nor is the evidence obviously cumulative. It was not already presented to the ALJ. Although [the provider] reviewed some of the same evidence evaluated by the ALJ, he did

so in order to formulate his retrospective opinion as to Plaintiff's functional limitations during the relevant time period.

*Pruett v. Saul*, No. 19-cv-00817 SMV, 2020 WL 6196175, at *5 (D.N.M. Oct. 22, 2020) (internal citations omitted). Moreover, "[a]lthough [Dr. Tucker's] opinion is similar to [her] prior opinion[s], there are differences," including new opinions explicitly purporting to assess Plaintiff's condition prior to her date last insured. *Cf. Casias v. Saul*, No. 18-cv-00537 LF, 2019 WL 4013890, at *4 (D.N.M. Aug. 26, 2019) (rejecting argument that evidence was cumulative where provider "offered opinions in February 2018 that he did not express in the March 2017 opinion").

The Court also finds that Dr. Tucker's July 2019 letter is chronologically pertinent. Under the HALLEX standard that both parties rely upon, the SSA states that the Appeals Council is not to

> apply a strict deadline when determining whether post-dated evidence relates to the period on or before the date of the hearing decision. There are circumstances when evidence dated after the hearing decision relates to the period on or before the date of the hearing decision. *For example, a statement may relate to the period on or before the date of the hearing decision when it postdates the decision but makes a direct reference to the time period adjudicated in the hearing decision.*

HALLEX I-3-3-6(B)(2) (emphasis added). Dr. Tucker's letter expressly states opinions concerning Plaintiff's limitations from 2006 through her date last insured and beyond. (AR at 17). Although the Commissioner cites to the Court's earlier decision in *Sells v. Saul*, No. 18-cv-01095 KRS, 2020 WL 1329737, at *2-3 (D.N.M. Mar. 23, 2020), that case is distinguishable because the opinion at issue in *Sells* did not assess the claimant's conditions or limitations prior to her date last insured, but instead merely relied upon information prior to the ALJ's decision before opining on the claimant's *present* ability to work.[8] While Dr. Tucker's opinions also

---

[8] *See* AR at 13, *Sells*, No. 18-cv-01095 KRS (Doc. 13-1).

speak to Plaintiff's present ability to work, the additional inclusion of opinions concerning her ability to work prior to her date last insured means that her July 2019 letter is indeed related to the period at issue.

The question of whether Dr. Tucker's additional evidence was material requires a more extended analysis. The ALJ's RFC findings concerning Plaintiff's capacity for mental work activities were premised on her conclusion that the record "*fails to provide any evidence* that [Plaintiff] had any [additional mental] limitations before December 31, 2012." (*See* AR at 53) (emphasis added). Specifically, the ALJ observed that function reports submitted by Plaintiff, her friends, and her sister did not specify her condition or daily activities prior to that date (*see id.*); that the opinions of Plaintiff's providers finding significant limitations did not "reflect[] an analysis of [her] ability to function during the relevant period" and were not consistent with medical records pertaining to that time (*see id.* at 53-54); and that state agency experts also found "*insufficient evidence* that the claimant had a severe mental . . . impairment prior to her date last insured" (*see id.* at 54) (emphasis added). On this basis in particular, the ALJ discounted the opinions of three providers (including Dr. Tucker) who each reached similar conclusions regarding Plaintiff's capacity for certain mental work activities. (*See id.* at 53-54).

But Dr. Tucker's July 2019 letter provides exactly the type of evidence that the ALJ found lacking: an analysis of Plaintiff's mental capacity limitations prior to her date last insured. The introduction of this evidence showing a consistency between Plaintiff's mental functioning capacity prior to the date last insured on the one hand, and her current mental functioning capacity as found by the three providers discounted by the ALJ on the other hand, may have a substantial impact on the ALJ's findings as to the severity of Plaintiff's impairments during the relevant period, her RFC, and the ultimate question of her disability. Although he only opined on

a few categories of non-physical limitations, Dr. Reagan—a provider who treated Plaintiff prior to her date last insured—found Plaintiff to be suffering from greater than slight (in most cases marked) limitations in each category, consistent with Dr. Tucker's own assessment of those limitations. *Compare* (AR at 480), *with* (*id.* at 806). Similarly, the findings from LPCC Becher that Plaintiff was moderately or markedly limited in nine categories of mental function overlapped with Dr. Tucker's own findings of greater-than-slight limitations in those same categories. *Compare* (AR at 482-83), *with* (*id.* at 806-07). Both Mr. Becher and Dr. Tucker also found marked limitations in at least two of the four paragraph B criteria of listing 12.04. *Compare* (*id.* at 484), *with* (*id.* at 515). Because the Commissioner is correct that the ALJ discounted these providers' opinions as to Plaintiff's mental function "because they were not consistent with the record" concerning her abilities prior to her date last insured (*see* Doc. 24 at 17), there is a reasonable probability that the introduction of evidence that is both consistent with the providers' opinions *and* directly addressed to the relevant chronological period would change the ALJ's findings.

The Honorable Laura Fashing, United States Magistrate Judge, faced a similar situation in *Cordova*. In that action, the ALJ had found that the opinions of one provider, Dr. Chari, as to the claimant's mental limitations were "not consistent with or supported by the record." *See Cordova*, 2020 WL 614577, at *8. In seeking Appeals Council review, the claimant provided additional evidence from Dr. Krueger "suggest[ing] significant functional impairments," but the Appeals Council refused to consider that additional evidence on materiality grounds. *See id.* In considering the rejection of that evidence on *de novo* review, Judge Fashing found that there was "a reasonable probability that the ALJ's calculus for consistency with the record would be altered if he were to consider Dr. Chari's opinions alongside Dr. Krueger's opinions" since the

two providers' opinions were so similar. *Id.* For this reason, and because "[t]he ALJ did not have

the benefit of . . . Dr. Krueger's findings" when assessing the claimant's RFC, Judge Fashing

concluded that there was "a reasonable probability that the ALJ's consideration of Dr. Krueger's

findings and opinions would alter his step-two findings and, more significantly, his RFC

determination," which would in turn impact the outcome of the claimant's disability application.

*See id.*

As in *Cordova*, the rejected letter from Dr. Tucker provides evidence that the ALJ did not

have the benefit of reviewing before she determined that the opinions of Dr. Tucker, Dr. Reagan,

and Mr. Becher were due to be accorded little weight. Moreover, because this evidence provides

a chronologically pertinent analysis in support of these providers' opinions, there is a reasonable

probability that consideration of this evidence may alter "the ALJ's calculus for consistency with

the record." *See id.* Further, some of these overlapping opinions on Plaintiff's limitations—such

as the consensus that Plaintiff has a marked limitation in her ability to complete her normal

workday and workweek without interruptions from her psychologically based symptoms—

pertain directly to her ability to perform *any* work. *See* SSA Program Operation Manual System

("POMS") § 25020.010(B)(2) (setting forth mental abilities needed for any job).[9] The Court

therefore finds that Dr. Tucker's July 2019 letter is material under the revised regulations'

heightened standard.

The Commissioner suggests that Dr. Tucker's additional opinions are not material

because they "were not based solely on Plaintiff's depression," but were instead also based on

---

[9] The POMS is "a set of policies issued by the [SSA] to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001). A "marked" limitation is defined in the POMS as one serious enough that a claimant who is markedly limited in an ability "cannot usefully perform or sustain the activity" in question. POMS § 24510.063(B)(3). Because the ability to complete a normal workday or workweek without interruption from psychologically based symptoms (for example) is critical to the performance of even unskilled work, *see* POMS § 25020.010(B)(3) (defining this requirement as "usually strict"), a "marked" limitation in that ability may have significant implications for a claimant's ability to work.

conditions first diagnosed *after* Plaintiff's last insured date. (*See* Doc. 24 at 17-18). Relatedly, the Commissioner argues that Dr. Tucker's letter cannot affect the outcome of the ALJ's decision because Dr. Tucker "did not treat Plaintiff during the relevant time period" and "first saw Plaintiff nearly four years after the date last insured." (*See id.* at 18). To be clear, some of Dr. Tucker's July 2019 analysis does concern Plaintiff's depression (*see* AR at 17), and the parties do not dispute that this condition was diagnosed prior to Plaintiffs' date last insured. This is enough to establish materiality as to Dr. Tucker's opinions on that condition. But more to the point, it is well established that "a treating [medical provider] may provide a retrospective diagnosis of a claimant's condition" if that diagnosis goes to the question of whether the claimant was disabled prior to her date last insured. *See Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990). Here, Dr. Tucker's July 2019 letter does not merely purport to diagnose Plaintiff's conditions prior to her date last insured, but also relates her opinion regarding certain impacts of those conditions during that time frame. (*See* AR at 17). Thus, the retrospective nature of Dr. Tucker's opinions is not enough, standing alone, to render her July 2019 opinions immaterial in light of the other potential impacts of those opinions on the ALJ's analysis.

Because the additional evidence from Dr. Tucker is new, material, and chronologically pertinent, the Court concludes that the Appeals Council erred in failing to consider it. Accordingly, Plaintiff's motion is due to be granted so that the Appeals Council may properly consider the additional evidence pursuant to 20 C.F.R. § 404.970(a)(5) & (b).

## 2.   Additional Evidence from Dr. Krueger

Dr. Krueger examined Plaintiff on May 17, 2019, exactly a month after the ALJ issued her decision. (*See* AR at 19). As part of his evaluation of Plaintiff, Dr. Krueger spent two and a

half hours reviewing a variety of medical records and other evidence that had previously been

before the ALJ, including Plaintiff's function report, third-party reports by her friends and sister,

and records from Dr. Tucker, Dr. Reagan, Mr. Becher, and two other providers. (*See id.* at 20).

Dr. Krueger also engaged in almost three hours of interviewing and testing of Plaintiff, followed

by another three hours of interpreting the results of the examination and writing up his report.

(*See id.*). Following his review, Dr. Krueger determined that Plaintiff has suffered from severe

anxiety, panic attacks, PTSD, agoraphobia, major depression, and cognitive functioning issues.

(*See, e.g.*, *id.* at 27-28). Dr. Krueger found "a consensus" that these conditions had existed since

Plaintiff's husband died in 2006, and he concluded from his own evaluation that she possessed

"marked functional impairment which, in all likelihood, has existed since 2006." (*See id.*). More

specifically, Dr. Krueger found greater than slight impairments in virtually all functional traits

assessed from prior to the date last insured to the present day, assessing marked or more severe

limitations in the vast majority of those traits. (*See id.* at 30-31). Dr. Krueger also found marked

functional limitations under all four paragraph B areas specified under each of listing 12.04

(affective disorders), listing 12.06 (anxiety disorders), and listing 12.15 (trauma and stressor-

related disorders). (*See id.* at 32-35). As with Dr. Tucker's opinions, the Appeals Council

rejected Dr. Krueger's opinions and related materials on materiality and chronological-

pertinence grounds. (*See id.* at 10).

　　　As to whether Dr. Krueger's opinions and related materials are new and chronologically

pertinent for purposes of 20 C.F.R. § 404.970(a)(5)-(b), the parties raise many of the same

arguments that were asserted concerning Dr. Tucker's additional evidence. The Court will not

repeat its analysis needlessly: for essentially the same reasons stated as to Dr. Tucker's

additional evidence, the Court finds that Dr. Krueger's opinions are new and relate to the period

at issue. *See, e.g.*, *Pruett*, 2020 WL 6196175, at *5; HALLEX I-3-3-6(B)(2). Although the Commissioner counters that Dr. Krueger's opinions are cumulative "to the extent that [he] looked at a few of the same records that were before the ALJ" (*see* Doc. 24 at 19), this contention overlooks the fact that Dr. Krueger was the first consultative examiner who reviewed Plaintiff's case and that his evaluation included not only a review of records, but also an interview and testing that was not previously conducted. *See, e.g.*, *Muskett*, 2021 WL 826675, at *6 (concluding that treating physician's opinions were not cumulative on similar grounds).

Likewise, Dr. Krueger's opinions are material for essentially the same reasons that apply to Dr. Tucker's July 2019 opinions. As with Dr. Tucker's opinions, Dr. Krueger's evidence expressly addresses Plaintiff's mental functioning capacity prior to her date last insured (*see* AR at 27-28, 30-31), thereby purporting to close the gap in assessments of Plaintiff's functional capacity identified by the ALJ. Dr. Tucker and Dr. Krueger each found that Plaintiff suffered from greater-than-slight mental functioning limitations in seventeen overlapping categories, many of which pertain to a claimant's ability to perform any work at all, *see* POMS § 25020.010(B)(2)-(3), and they both agree that Plaintiff satisfied the paragraph B criteria for both listing 12.04 and listing 12.06. *Compare* (*id.* at 515-16, 806-07), *with* (*id.* at 30-33). Additionally, Dr. Krueger's assessment of Plaintiff's limitations almost wholly overlaps with the moderate or marked limitations found by Dr. Reagan, *compare* (*id.* at 480), *with* (*id.* at 30-31), and both Dr. Krueger and Mr. Becher found greater-than-slight limitations in nine overlapping categories as well as satisfaction of the paragraph B criteria under listings 12.04 and 12.06, *compare* (*id.* at 482-85), *with* (*id.* at 30-35). These overlapping findings, combined with Dr. Krueger's explicit evaluation of these conditions as of prior to Plaintiff's date last insured (*see id.* at 30), present a reasonable probability that consideration of Dr. Krueger's opinions would

change the ALJ's findings as to the consistency of these providers' opinions with the record and the weight to accord to them. *See Cordova*, 2020 WL 614577, at *8. Thus, there is a reasonable probability that consideration of these findings and opinions would alter the ALJ's determination as to Plaintiff's disability.

The additional evidence from Dr. Krueger is new, material, and chronologically pertinent. The Court therefore concludes that the Appeals Council erred in failing to consider it and that remand is required so that this additional evidence may be properly considered pursuant to 20 C.F.R. § 404.970(a)(5) & (b).

## V. CONCLUSION

The Court offers no opinion as to the ultimate disposition of Plaintiff's application for benefits in light of the additional evidence submitted by Plaintiff. *See Chambers v. Barnhart*, 389 F.3d 1139, 1143 (10th Cir. 2004) (recognizing that "the Appeals Council . . . has the responsibility to determine in the first instance whether, following submission of additional, qualifying evidence, the ALJ's decision 'is contrary to the weight of the evidence currently of record'"). The Court does conclude, however, that the additional evidence is new, that it is chronologically pertinent, and that there is a reasonable probability that its proper consideration could alter the SSA's disability determination as to Plaintiff. Accordingly, the Appeals Council erred in failing to consider that evidence, and remand is required. Plaintiff's Motion to Reverse and Remand (Doc. 23) is therefore **GRANTED**, and the Court remands this case back to the SSA for proceedings consistent with this opinion.

**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**